Filed 7/24/26  P. v. Malveaux CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHANNON MALVEAUX,<br><br>    Defendant and Appellant. | B342436<br>(Los Angeles County<br> Super. Ct. No. YA104272) |

APPEAL from judgment of the Superior Court of Los Angeles County, Lowynn Young, Judge.  Affirmed.

Ryan Peabody, Jennifer Peabody, and Ava Wallace, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Lauren N. Guber, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Shannon Malveaux appeals from judgment following his conviction for making criminal threats against Alfonso Barron, the boyfriend of a woman defendant was stalking. Defendant contends the record is insufficient to support the finding his threats placed Barron in "sustained fear." He further contends the court erred in its sua sponte duty to instruct the jury on the lesser included offense of attempted criminal threats. We affirm.

## FACTUAL BACKGROUND

In late 2017, defendant befriended an unhoused woman named Genevieve Bernatchez and offered her a place to live. Bernatchez stayed in defendant's home for two "very short period[s] of time" in early 2018. Bernatchez told defendant she had no interest in dating, but defendant ignored her and began exhibiting a pattern of controlling behavior. Bernatchez moved out permanently after defendant threatened to kill her with a machete.

Defendant kept track of Bernatchez's whereabouts between 2018 and 2020. He left love notes and large banners in places she was living and, on several occasions, confronted and violently assaulted her. During one incident in 2020, defendant used homemade incendiary devices to set fire to an encampment where Bernatchez and her boyfriend, Barron, were living. Defendant returned a few weeks later, removed fire extinguishers from the area, and set fire to another encampment while Bernatchez and Barron were sleeping. Barron screamed after he discovered the fire.

Around 12:00 p.m. on July 27, 2021, defendant appeared at a new encampment with what Bernatchez described as a

2

homemade flamethrower.  Bernatchez testified that she was changing clothes inside a tent when she heard Barron scream out, "'He's here.  Run.  Get out.'"  Bernatchez stepped away as the tent around her burned.  She saw defendant shooting six-foot-long flames from the flamethrower.  From about 20 to 25 feet, defendant yelled at Barron he was "going to kill [him].  And then he proceeded [to] actually turn the flamethrower on him."  The flames "[a]lmost touch[ed]" Barron as he pushed over a grocery cart to block defendant's path and attempted to get away.  Minutes later, defendant's flamethrower malfunctioned or ran out of fuel.  As he left the area, defendant told Barron he would kill him if he did not leave Bernatchez.  The fire killed two of Bernatchez's domesticated cats.

Los Angeles County Sheriff's Department Deputy Rene Diaz responded to a 911 phone call and spent more than 30 minutes reviewing the scene and speaking with Bernatchez and Barron.  Diaz noticed Barron "seemed very stressed" and "disheveled."  Barron and Bernatchez showed Diaz parts of their bodies that were either burned or singed by the fire.  Barron looked "almost like charred" with soot covering his body.  Defendant was arrested in a nearby area later that evening.

## PROCEDURAL BACKGROUND

An amended information charged defendant with two counts of attempted murder (Pen. Code, §§ 664/187, subd. (a)),[1] one count of arson of an inhabited dwelling (§ 451, subd. (b)), one count of making criminal threats against Barron (§ 422), and one count of stalking Bernatchez (§ 646.9, subd. (a)).  The information

---

[1]     Subsequent unspecified references to statutes are to the Penal Code.

also alleged aggravating sentencing factors (Cal. Rules of Court, rule 4.421(a)(1), (a)(8), (b)(1)).

Following trial, the jury acquitted defendant of the attempted murders, convicted him of all other charges, and found the aggravating sentencing factors true. Defendant was sentenced to an overall term of nine years four months imprisonment.

## DISCUSSION

### A.     Sufficiency of Evidence of Making Criminal Threats

Defendant contends insufficient evidence supports his conviction for making criminal threats. We disagree.

"'"[W]e review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.) We presume in support of the judgment every fact the jury could reasonably deduce from direct and circumstantial evidence. (*People v. Baker* (2021) 10 Cal.5th 1044, 1103; *People v. Vargas* (2020) 9 Cal.5th 793, 820.) Reversal is unwarranted unless it appears "'"that upon no hypothesis whatever is there sufficient substantial evidence to support"'" the verdict. (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

The following elements comprise a violation of section 422 for making criminal threats: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . be taken as

4

a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 (*Toledo*).)

Defendant contends the evidence was insufficient to establish the fourth element requiring "sustained fear," or fear for a period of time extending "beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) He argues (1) Barron did not testify at trial; and (2) no additional testimony established his sustained fear.

We reject both arguments. To begin with, Barron's testimony was not required to establish his fear. (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 417.) The existence of fear "may be proved with circumstantial evidence" and "inferred from the circumstances in which a crime is committed . . . ." (*People v. Holt* (1997) 15 Cal.4th 619, 690.) Indeed, "the surrounding circumstances should be taken into account to determine if a threat falls within the proscription of section 422." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013 (*Solis*).)

The only reasonable construction of the evidence here is that defendant placed Barron in sustained fear. The flamethrower incident lasted several minutes and began when defendant set Barron's (and Bernatchez's) home ablaze with

Bernatchez inside.  After Barron cried out for Bernatchez, defendant threatened to kill him and "actually turn[ed] the flamethrower on him," shooting flames that "[a]lmost touch[ed]" him as he tried to get away.  After defendant's flamethrower malfunctioned or ran out of fuel, he left while threatening to kill Barron again.  These "mannerisms, affect, and actions" (*Solis, supra*, 90 Cal.App.4th at p. 1013) practically compelled the jury to find defendant's threats placed Barron in sustained fear.  That the incident lasted several minutes is of no legal effect, as any "minute during which [Barron] heard the threat and saw [defendant's] weapon qualifies as 'sustained' under the statute.  When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.'  [Citation.]" (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349; see also *People v. Culbert* (2013) 218 Cal.App.4th 184, 190–191 ["split second" sufficient].) Sufficient evidence supported defendant's conviction for making criminal threats to Barron.

## B.    Sua Sponte Duty to Instruct Lesser Included Offense

Anticipating we would conclude the evidence sufficiently supports defendant's conviction, defendant further contends the trial court erred in its sua sponte duty to instruct the jury with the lesser included offense of attempted criminal threat.  Again, we disagree.

The duty to instruct the jury on a lesser included offense arises when there is substantial evidence "'from which a reasonable jury could conclude that the defendant committed the lesser, *but not the greater*, offense.'" (*People v. Landry* (2016) 2 Cal.5th 52, 96.)  "'This substantial evidence requirement is not satisfied by "'*any evidence* . . . no matter how weak,'" but rather

6

by evidence from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed.'" [Citation.]" (*People v. Wilson* (2021) 11 Cal.5th 259, 298; see also *People v. Valdez* (2004) 32 Cal.4th 73, 116.) We review this claim independently. (*People v. Nelson* (2016) 1 Cal.5th 513, 538.)

Attempted criminal threat is a lesser included offense of making a criminal threat. (*Toledo, supra,* 26 Cal.4th at pp. 230, 235.) This lesser offense may occur if the defendant "makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat." (*Id.* at p. 231.) It may also occur if the defendant "makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear." (*Ibid.*; see *id.* at p. 232 [a "fortuity or unanticipated event" may thwart completion of the crime].)

We conclude that insufficient evidence supported defendant's committing only an attempted criminal threat. As discussed, the evidence practically compelled the finding that Barron was placed in sustained fear. Defendant threatened to kill him while nearly setting him on fire. As defendant admits, the actions Barron took during the incident to "get out of the line of fire and knocking the grocery cart over to create an obstacle" sufficiently demonstrated this "fear during the incident." Beyond these actions, Barron appeared visibly stressed and disheveled long after the incident. Defendant identifies no countervailing

7

evidence to suggest Barron was not actually placed in sustained fear.

Even assuming the evidence warranted the instruction defendant now seeks on appeal, any error in failing to give it was harmless. "The failure to instruct on a lesser included offense in a noncapital case does not require reversal 'unless an examination of the entire record establishes a reasonable probability that the error affected the outcome.' [Citation.] 'Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.'" (*People v. Thomas* (2012) 53 Cal.4th 771, 814, fn. omitted.)

At trial, neither the prosecution nor the defense argued that defendant's threats failed to place Barron in sustained fear. Rather than disputing Barron's fear, the defense attacked Bernatchez's character to raise questions about the truth of her testimony. On these facts, we conclude a reasonable jury would have convicted defendant of making a criminal threat, not simply attempting to make a criminal threat. "[I]ndeed, defendant did not argue otherwise at trial—and no reasonable juror could have concluded otherwise." (*People v. Chandler* (2014) 60 Cal.4th 508, 525–526 [instructional error harmless beyond reasonable doubt where defendant threatened to kill victim "while face-to-face" and wielding weapon].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                          MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.